(No. 83-CC-0059—)

KATHRYN DANIELS, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed March 10, 1988.*

HEILIGENSTEIN & BADGLEY, for Claimant.

NEIL F. HARTIGAN, Attorney General (CLAIRE GIBSON TAYLOR, Assistant Attorney General, of counsel), for Respondent.

MONTANA, C.J.

Claimant, Kathryn Daniels, brought this action for personal injuries she sustained while she and her husband were visiting their son, Lawrence Daniels, who was an inmate at the Centralia Correctional Facility. In her complaint, as ultimately amended, she alleged she was entering through an electrically operated door of the facility when the door "suddenly and without warning started to close." She further alleged that her right hand was either stuck in or caught by the door, as a result of which she was injured. She asserts negligence on the part of the Respondent on the grounds that its employees negligently acted in one or more of the

following respects: they allowed the door to become and remain in a dangerous condition so that it might suddenly start to close on its own power, they failed to stop the door from closing although they knew or should have known that Claimant was attempting to use the door and would be injured if the movement of the door were not stopped, they failed to maintain the door in a proper and safe condition, they failed to repair the door although they knew or should have known of the unsafe condition of the door, they started to close the door or permitted it to close while Claimant was passing through the doorway, and they failed to properly inspect the door so as to discover the existence of a hazardous and dangerous condition. Significantly, the alleged hazardous or unsafe condition was never described.

A hearing for this matter was held on July 29, 1987, before Commissioner Robert Hillebrand. At the close of the presentation of Claimant's evidence, Respondent moved for judgment in Respondent's favor pursuant to section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1110). Section 2—1110 requires that the trier of fact weigh the evidence when Respondent moves for a finding in its favor at the close of Claimant's case. Such a motion in a nonjury matter submits the whole case to the trier of fact for determination on the merits. (*Banks v. Gregory* (1959), 16 Ill. 2d 227, 157 N.E.2d 12.) Commissioner Hillebrand indicated to the parties that judgment should be entered for Respondent because Claimant had failed to prove her case. The Commissioner thereafter filed his report with the Court.

In a letter dated October 12, 1987, the Commissioner informed Claimant's attorney that in spite of his ruling, it was still Claimant's obligation to have a transcript of the hearing prepared and filed with the

clerk of the Court of Claims if Claimant wanted the Court to review the hearing record and reject the Commissioner's recommendation that judgment be entered for Respondent. The Commissioner also informed Claimant's attorney that if the Commissioner was not notified within 14 days of the receipt of the letter of Claimant's intentions regarding the filing of a transcript, it would be assumed that Claimant did not intend to file a transcript and the Court would make a ruling based upon his recommendation and upon the existing record. A transcript has not been filed and neither party has filed a brief.

According to the Commissioner's report Claimant gave the following testimony at the hearing. She and her husband went to visit their son at the correctional facility on October 18, 1981. They were escorted by Sgt. Ford of the Department of Corrections into the visitors area of the correctional facility. They waited for a couple in front of them to pass through the doorway and then went through the door where the Claimant was injured in what she described several times as a "freak accident." In an effort to describe how the accident occurred, Claimant testified to several different events. First she said that, when a buzzer sounded, the door opened by having two doors retract by sliding into or along the walls next to the doors and thereby opening in the middle. She said her finger got shut in between these doors. When pressed on this further by her attorney, she then said she believed that only one door swung open on hinges to the right. After being questioned on both direct and cross-examination, Claimant said she simply did not remember how the door opened, nor could she remember through which door she was passing. She also insisted that she could not remember exactly how her hand was caught in the door or in what part of the door.

She believes she was simply walking through the doorway with her hand at her side when it somehow was caught. She denied seeing her hand in the door at any time, but rather simply remembered feeling pain and quickly retracting her hand. She then testified at some length about her medical treatment and the nature and extent of her injury.

The Commissioner's report states that Jessie Daniels, Claimant's husband, testified as follows. He and his wife were visiting their son at the correctional facility along with their son's fiancee and three of their son's children. Mr. Daniels identified from the departmental report a sketch which had been made of the gate house through which all of them had first entered the grounds of the facility. He was able further to identify without qualification that the door where his wife was injured was the door that passed from the gate house into the interior courtyard of the facility. Visitors had to walk through that courtyard to reach the administrative building of the facility, which houses the visiting area. Two photographs of this door were clearly identified by Mr. Daniels. The door is a single door which swings on a hinge on the right side out and away from the interior of the gate house and into the courtyard. It has a glass window in the middle and is surrounded by a frame. On the inside left side of the door is a plain metal plate which is pushed by the person using the door to open the door out of the gate house and into the courtyard. On the outer, courtyard side of the door is a single handle which must be pulled to open the door by a person entering the gate house from the courtyard. The door is electrically locked and unlocked by a guard in the gate house. However, the door will not open or close electrically; only the locking mechanism is operated electrically. The door can only be opened by the manual action of the person

pushing or pulling the door. After the door has been opened and is no longer being held in an open position, it is brought back to the closed position by a pneumatically operated return mechanism attached to the top of the door.

The Commissioner's report further states that Mr. Daniels initially testified that his wife was holding the door open when the wind in the courtyard pushed the door closed against her hand. However, he admitted he had never felt or experienced the wind push the door, but only assumed that was a possibility of how the door had been closed on his wife's hand. He further admitted that he did not see the door close on his wife or on her hand. He testified that his wife opened the door and stepped through the doorway and held the door open for him and the rest of the persons in his party to pass through. He was first made aware of a problem when he heard his wife yell in pain. He turned around and saw his wife holding her hand.

According to the Commissioner, although Claimant was considerably confused as to what kind of door injured her and how the injury occurred, Mr. Daniels quite clearly identified the door and what occurred at the time of the injury. Unfortunately, he could not testify as to what happened to cause Claimant's hand to be injured, as he did not actually see this occur. The most he could say was that he had been told by an officer on duty that the door needed to be fixed and that the officer knew someone was going to get hurt. However, Claimant presented no evidence as to what kind of repair was needed, what mechanism or portion of the door needed repair or what specifically was meant by the statement of the officer. The departmental report placed into evidence pursuant to Rule 14 clearly states

70

that there is no evidence of disrepair or faulty operation. No other evidence or testimony was presented by Claimant in regards to liability.

Based on the record before us, we find that Claimant has been unable to present any evidence to support her specific allegations of negligence. It appears that Respondent had no control over the opening and closing of the door and thus had no independent operation to control the closing of the door on Claimant's hand. We further find that although it has not been pleaded, there is no evidence to allow the claim to proceed on the theory *res ipsa loquitur*. At the very least, Claimant must show that the instrumentality which injured her was under the exclusive control of Respondent and not under her control in any way. Since Claimant was the only person operating the door, the *res ipsa* theory does not apply to her claim.

Wherefore it is hereby ordered that Respondent's motion for judgment be, and is, hereby granted and that this claim be, and is, accordingly dismissed.